IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cr-20557-KMM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LAVONT FLANDERS, JR.,

and

EMERSON CALLUM,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTIONS FOR A NEW TRIAL

THIS CAUSE came before the Court upon Defendants' Motions for a New Trial (ECF No. 139, 140). The Government filed a Response (ECF No. 141). The Motion is now ripe for review. UPON CONSIDERATION of the Motions, the Government's Response, the pertinent portions of the Record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND

Defendant Lavont Flanders, Jr. and Defendant Emerson Callum were arrested on August 17, 2011 on suspicion of violating, *inter alia*, 18 U.S.C. § 371 (conspiracy to commit offense or to defraud the United States); 18 U.S.C. § 1591 (sex trafficking of children or by force, fraud, or coercion); 18 U.S.C. § 1994(c) (conspiracy to violate 18 U.S.C. § 1591); and 21 U.S.C. § 841(b)(2) (distribution of a controlled substance). Essentially, the Defendants were alleged to have used the fraudulent prospect of a legitimate modeling opportunity to lure women to the

Miami metropolitan area, where—during what each woman was led to believe was an "audition" for the modeling opportunity—the Defendants would drug each woman with a controlled substance. Once the women were rendered incapacitated by the controlled substance, one of the Defendants would then have sex with each helpless woman while the other Defendant filmed the encounter. The Defendants would then commercially distribute each film for monetary profit.

On November 29, 2011 a jury trial commenced. On December 5, 2011 the Government and defense both rested their cases, and the Court informed both parties that closing arguments would begin promptly at 9 a.m. the following morning. By 9 a.m. the next day, the gallery in the courtroom was nearly full.[1] At approximately 9 a.m., and in full presence of the gallery, the Court informed the parties that, once closing arguments commenced, the courtroom's doors would be locked for the duration of the closing arguments, so as to maintain order in the courtroom and prevent distraction to the parties and jurors. Neither party objected, and at approximately 9:05 a.m., the courtroom doors were locked and closing arguments commenced.

On December 7, 2011, the parties were informed that a verdict had been reached. Prior to the announcement of the verdict, defense counsel informed the Court that several of the Defendants' friends and family members had arrived to the courthouse the previous day after 9:05 a.m.,[2] and because the doors to the courtroom were locked, they were unable to witness closing arguments.[3] Though defense counsel admitted that most of the defendants' friends and family had been in the courtroom to observe closing arguments, the Court nevertheless offered

---

[1] With the exception of the first row behind defense counsel, where for safety reasons, the U.S. Marshals Service does not permit anyone to sit.

[2] See Affs. of Tammy German, Darrell Flanders, Melvin Norton, Myrtle Callum, and Orville Simpson (ECF No. 139-1, 140-1).

[3] The Government states—and the Defendants do not object—that "there were not nearly enough empty seats in the courtroom (if there were any at all) to accommodate all of the people who were locked outside of the courtroom). Resp. to Mot. for New Trial, at 2 (ECF No. 141).

2

defense counsel the opportunity to conduct their closing arguments over again—this time with the courtroom doors unlocked. Defense counsel declined the Court's invitation, and the jury was then brought into the courtroom to return their verdict. The jury returned verdicts of guilty on all counts. One week later, on December 14, 2011, the Defendants filed the instant motions for a new trial. The Court now takes up the issue of whether the Defendants' Sixth Amendment Right to a Public Trial was violated when the Court ordered the courtroom doors locked during the duration of the parties' closing arguments.

## II. ANALYSIS

The Sixth Amendment to the United States Constitution guarantees the accused in all criminal prosecutions the right to a "speedy and public trial." U.S. Const. amend. VI. A public trial ensures that "'the public may see [that the accused] is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'" Waller v. Georgia, 467 U.S. 39, 46 (1984) (quoting Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 380 (1979)); see also Judd v. Haley, 250 F.3d 1308, 1315–16 (11th Cir. 2001). A public trial also discourages perjury. Judd, 250 F.3d at 1315–16.

The precise contours of an accused's Sixth Amendment right to a public trial, however, are ill-defined. See Waller, 467 U.S. at 44 ("This Court has not recently considered the extent of the accused's right under the Sixth Amendment to insist upon a public trial, and has never considered the extent to which that right extends beyond the actual proof at trial."). Courts have grappled with questions such as when the right attaches, and under what circumstances may the right be subordinated to other competing interests. Therefore, to determine whether an accused's right to a public trial has been violated, several antecedent issues must be resolved: (1) whether

an accused's Sixth Amendment right to a public trial extends to the closing arguments of a trial; (2) if the right does extend to the closing arguments of a trial, whether there was a "closure" of the courtroom; and (3) if there was a closure of the courtroom, whether the closure implicated the accused's Sixth Amendment right to a public trial. The Court now takes up each issue in turn.

A. The Scope of an Accused's Sixth Amendment Right to a Public Trial

The Supreme Court has held that an accused's Sixth Amendment right to a public trial extends not only to trial, but to the "voir dire proceeding in which the jury is selected." See Press–Enter. Co. v. Superior Court of California, 464 U.S. 501, 511–13 (1984). The right also extends to suppression hearings. See Waller, 467 U.S. at 47. Whether the right extends to all facets of a criminal matter, however, has been a source of disagreement among the lower federal courts. See U.S. v. Sorrentino, 175 F.2d 721, 722 (3rd Cir. 1949) ("The constitutional guarantee, however, applies to the entire trial, including that portion devoted to the selection of the jury."). But see U.S. v. Norris, 780 F.2d 1207, 1210 (5th Cir. 1986) (holding that the Sixth Amendment right to a public trial does not extend to "[n]on-public exchanges between counsel and the court on such technical legal issues and routine administrative problems" where "no fact finding function is implicated"); see also U.S. v. Ivester, 316 F.3d 955, 959 (2003). What appears to be determinative of whether the right extends to a given proceeding is whether the purposes underlying the right are implicated by the proceeding. See Waller, 467 U.S. at 46; Press–Enterprise Co., 464 U.S. at 508–09; Douglas v. Wainwright, 739 F.2d 531, 532 (11th Cir. 1984). As closing arguments are for the benefit of the jury, who are kept "keenly alive to a sense of their responsibility and to the importance of their functions" by a public audience, Waller, 467 U.S. at 46 (quoting DePasquale, 443 U.S. at 380), this Court holds that the Sixth Amendment right to a

4

public trial extends to the parties' closing arguments in a criminal trial properly brought before a jury, or in the case of a bench trial, a judge.[4]

B. "Closure" of the Courtroom

Having determined that the Sixth Amendment right to a public trial extends to the parties' closing arguments, the next issue for resolution is whether a "closure" of the courtroom took place so as to render the trial "non-public." At least one court has held that—though a courtroom's public access may have technically been restricted—a closure may be so insignificant that it does not actually constitute a closure. See U.S. ex rel. Tenner v. Gilmore, No. 97-C-2305, 1998 WL 721115, at *11 (N.D. Ill. Oct. 8, 1998) ("[T]he trial judge's decision to lock the courtroom doors during closing arguments and while instructing the jury was reasonable. Because ingress and egress of the public was allowed during every other phase of Tenner's trial, his trial was never "closed" in violation of the Sixth Amendment.").

The U.S. Court of Appeals for the Eleventh Circuit, however, has distinguished between "partial closures" and "full closures." Judd, 250 F.3d at 1315. A partial closure occurs when public access to the courtroom is restricted in some fashion, but "access to the courtroom is retained by some spectators." Id. Conversely, a full closure occurs when the press and public are specifically excluded from the courtroom. See Wainwright, 739 F.2d at 532. In the instant case, it is clear that only a partial closure took place. The doors to the courtroom were locked immediately prior to the parties' closing arguments, but members of the public were permitted access at all times prior to the commencement of the parties' closing arguments, and most of the defendants' friends and family were in the courtroom and able to observe closing arguments.

---

[4] While there does not seem to be any real doubt that the parties' closing arguments constitute part of a "trial" for purposes of the Sixth Amendment right to a public trial, there is no unambiguous authority on the matter. In an abundance of caution, this Court includes the latter analysis.

5

C. Whether the Partial Closure Implicated the Sixth Amendment Right to a Public Trial

The sole issue left for determination is whether the partial closure affected by the Court led to a violation of the defendants' Sixth Amendment right to a public trial. The Eleventh Circuit has stated that "where a partial closure is involved, a court must look to the particular circumstances to see if the defendant still received the safeguards of the public trial guarantee." See Wainwright, 739 F.2d at 532. Accordingly, a defendant's Sixth Amendment right to a public trial has been violated only when the defendant did not receive the safeguards of the public trial guarantee, and there was not a "substantial" reason for the partial closure. Id. at 532–33. To the extent that a "substantial" reason for partial closure is needed, however, appears to be tempered by the recognition of a trial judge's ability, in the interest of justice, to "impose reasonable limitations on access to a trial" Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581 n.18 (1980); see also Press–Enter. Co., 464 U.S. at 511 n.10.

Here, the Defendants received every safeguard provided by the Sixth Amendment right to a public trial. The courtroom was open to the public at every stage of the proceeding except for the time during which the parties gave their closing arguments to the jury. At the time of the partial closure, the courtroom was nearly full, and there were not enough empty seats in the courtroom to accommodate all of the people who were locked outside of the courtroom. Finally, each of the Defendants had friends and family in the courtroom that witnessed the parties' closing arguments.

Finally, there is no question that this Court was justified in limiting the ability of the public to disturb the jury and counsel at such an important part of the proceedings. Closing arguments are intended as a last opportunity for the parties to impress upon the jury a specific

view of the evidence and to influence the jury to return with a favorable verdict. Allowing members of the public to freely come and go during the parties' closing arguments would have distracted members of the jury and inhibited their ability to perform their important function. "It is far more important that trials be conducted in a quiet and orderly setting than it is to preserve that atmosphere on city streets." Richmond Newspapers, Inc., 448 U.S. at 581 n.18. Consequently, this Court holds that the Defendants' Sixth Amendment Right to a Public Trial was not violated.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Defendants' Motions for a New Trial (ECF No. 139, 140) are DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of January, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record