# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 16, 2014

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  12-10995-AA  ; 12-11185 -AA  ; 12-15027 -AA  ; 12-15248 -AA
Case Style: USA v. Lavont Flanders, Jr.
District Court Docket No: 1:11-cr-20557-KMM-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Regina A. Veals-Gillis
Phone #:  (404) 335-6163

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 12-10995

_____

District Court Docket No.
1:11-cr-20557-KMM-1

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

versus

LAVONT FLANDERS, JR.,
a.k.a. Antone Cobe,
a.k.a. Shannon, et al.,
EMERSON CALLUM,
a.k.a. Jah-T,

                    Defendants - Appellants.

_____

No. 12-15027

_____

D.C. Docket No.  1:11-cr-20557-KMM-1

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

 versus

LAVONT FLANDERS, JR.,
a.k.a. Antone Cobe,
a.k.a. Shannon,,
a.k.a. Larry Griffin,
a.k.a. Karen Watson,
a.k.a. Darius,

ISSUED AS MANDATE:  10/16/2014

a.k.a. Ladarius Cobe,
a.k.a. Darius Cove,
a.k.a. Errick Farmer,
a.k.a. Eric Lawson,
a.k.a. Erick Liwson,
a.k.a. Tina Clintmore,
a.k.a. Erick Blossom,
a.k.a. Gregory Bagget,

Defendant-Appellant.

---

No. 12-15248

---

D.C. Docket No.  1:11-cr-20557-KMM-1

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

 versus

LAVONT FLANDERS, JR.,
a.k.a. Antone Cobe,
a.k.a. Shannon,
a.k.a. Larry Griffin,
a.k.a. Karen Watson,
a.k.a. Darius,
a.k.a. Ladarius Cobe,
a.k.a. Darius Cove,
a.k.a. Errick Farmer,
a.k.a. Eric Lawson,
a.k.a. Erick Liwson,
a.k.a. Tina Clintmore,
a.k.a. Erick Blossom,
a.k.a. Gregory Bagget,

          Defendant-Appellant.

ISSUED AS MANDATE:  10/16/2014

_____

Appeals from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: May 27, 2014
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

ISSUED AS MANDATE:  10/16/2014

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-10995

————————————————

D.C. Docket No. 1:11-cr-20557-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAVONT FLANDERS, JR.,
a.k.a. Antone Cobe,
a.k.a. Shannon, et al.,
EMERSON CALLUM,
a.k.a. Jah-T,

Defendants-Appellants.

————————————————

No. 12-15027

————————————————

D.C. Docket No.  1:11-cr-20557-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAVONT FLANDERS, JR.,
a.k.a. Antone Cobe,
a.k.a. Shannon,,
a.k.a. Larry Griffin,
a.k.a. Karen Watson,
a.k.a. Darius,
a.k.a. Ladarius Cobe,
a.k.a. Darius Cove,
a.k.a. Errick Farmer,
a.k.a. Eric Lawson,
a.k.a. Erick Liwson,
a.k.a. Tina Clintmore,
a.k.a. Erick Blossom,
a.k.a. Gregory Bagget,

Defendant-Appellant.

_____

No. 12-15248
_____

D.C. Docket No. 1:11-cr-20557-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAVONT FLANDERS, JR.,

2

a.k.a. Antone Cobe,
a.k.a. Shannon,
a.k.a. Larry Griffin,
a.k.a. Karen Watson,
a.k.a. Darius,
a.k.a. Ladarius Cobe,
a.k.a. Darius Cove,
a.k.a. Errick Farmer,
a.k.a. Eric Lawson,
a.k.a. Erick Liwson,
a.k.a. Tina Clintmore,
a.k.a. Erick Blossom,
a.k.a. Gregory Bagget,

Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(May 27, 2014)

Before MARTIN and FAY, Circuit Judges, and DUFFY,[*] District Judge.

DUFFY, District Judge:

For years Lavont Flanders, Jr., and Emerson Callum (collectively,

"Defendants" or "Appellants") perpetrated a scheme in which they fraudulently

lured women to South Florida, drugged them with Benzodiazepines, filmed them

engaging in sexual acts, and distributed the pornographic footage.  After a six-day

trial, a jury convicted both Flanders and Callum on multiple counts of inducing

---

[*] Honorable Patrick Michael Duffy, United States District Judge for the District of South
Carolina, sitting by designation.

women to engage in sex trafficking through fraud and of benefitting from that

scheme.  Flanders was also convicted of distributing a controlled substance, which

he used to impair the victims' judgments such that they would participate in the

filming of pornographic videos.  Appellants were sentenced to multiple

consecutive life sentences.  In this appeal, they raise several challenges to their

convictions and sentences, and Flanders challenges his forfeiture.  After oral

argument and a careful review of the briefs and record in this case, we affirm.

## I. *Background*

### A. Criminal Scheme

As part of the scheme, Flanders, using one of numerous aliases, would

recruit women off of modeling websites and convince them to travel to South

Florida for an "audition" for a liquor commercial.  He usually advised the women

to come alone to the audition.  When they arrived, Flanders explained that they

would need to act out a scene for a commercial before they could be taken to a

second man, later identified as Callum, to film test footage.  Flanders convinced

the women that the auditions required them to taste alcohol, say scripted lines, and

repeat the scene several times.  Unbeknownst to the women, the alcohol was laced

with Benzodiazepines, a drug known to impair memory and reduce inhibitions.

As Flanders drove the women to another location to meet Callum, whom

they thought was a Bacardi agent, the victims became dizzy, groggy, and often

"blacked out."  Flanders and Callum then had the women sign Model Release

Forms.  The women remembered little, as they helplessly fell unconscious, waking

momentarily only to realize that Callum was having sex with them while Flanders

filmed.  When they fully regained consciousness the following day in their cars or

hotel rooms, they were disoriented, confused, and sometimes bleeding and covered

in bodily fluids.  At least four victims tested positive for Callum's DNA, recovered

from vaginal swabs, and for Benzodiazepines.

Unbeknownst to the victims, Callum distributed and attempted to distribute

videos of the assaults over the Internet and to businesses through his pornographic

production company, Miami Vibes Enterprises.  The distributed videos were edited

to remove portions where the victims were obviously unconscious.

## B. Police Investigation

In the midst of their scheme, in 2007, Appellants were arrested by state

police, and their residences were searched pursuant to warrants.  Both were

released on bond and continued their scheme until their arrests in 2011 following

searches pursuant to new warrants.

### 1. 2007 Searches

In Flanders's bedroom in a residence he shared with two adult relatives,

officers discovered victims' pornographic videos.  In the only bathroom in the

residence, officers found a prescription codeine pill bottle containing eight

5

Diazepam pills and three codeine pills.  Flanders waived *Miranda* rights, stated that he was a bus driver, denied working for Bacardi, denied knowing Callum or Miami Vibes, and denied meeting anyone at an IHOP restaurant (although officers knew he had met a victim there).

In Callum's office, officers observed hundreds of pornographic photos on the walls.  They seized thousands of pornographic videos, including hundreds of copies of three victims' videos, and nude photos of a fourth victim.  Officers found raw footage of one victim that included footage—which had been edited out of the commercial copy—in which she fell asleep during the sexual encounter.  Even the raw footage was not a complete representation of the encounter between the victim and Callum because the filming stopped and started.

In Callum's residence, officers found hundreds of inserts for, and commercial copies of, victims' videos, Model Release Forms for two victims, copies of the video interview of one victim, and evidence that Callum paid for the artwork on a victim's video.

### 2. 2011 Searches

From a residence Flanders shared with his girlfriend and her sister, officers seized four computers and memory devices, a cellphone, a camera, numerous videos of victims (some packaged for sale), Model Release Forms for five victims, and a copy of one victim's student ID.  Officers also found a package containing

letters from Flanders to HomeGrownVideo revealing that Flanders was attempting to sell pornographic videos of Callum and several young women, including one of the victims.  On a nightstand, officers found a bottle containing nineteen Clonazepam pills.  Analysis of recovered computers showed that Flanders used them to email victims and conduct hundreds of searches on modeling websites and searches for images of unconscious women.

In Callum's residence, officers seized over 100 boxes, including sales receipts for victims' videos, victims' Model Release Forms, and hundreds of victims' DVDs (commercial and master copies), and DVD cover inserts.  Also found was a handwritten note indicating that one victim's footage was filmed at a Miami motel.

## C. Procedural History

A twenty-count superseding indictment charged both Appellants with conspiracy and substantive sex trafficking of women (18 U.S.C. §§ 371, 1591, 1594), and Flanders with narcotics distribution (21 U.S.C. § 841).  Count 1 charged a § 371 conspiracy (May 2006–July 2007) to commit sex trafficking by fraud.  Substantive offenses committed during this conspiracy were: § 1591(a)(1) sex trafficking by fraud (Counts 2, 4, 7, and 10) and § 1591(a)(2) benefitting by participating in a venture that commits sex trafficking by fraud (Counts 3, 6, 9, and 11).  Count 13 charged a § 1594(c) conspiracy (May 2010–August 2011) to

commit sex trafficking by fraud.  Substantive offenses committed during this

conspiracy were: § 1594(a) attempted sex trafficking by fraud (Counts 14 and 16)

and § 1594(a) attempted benefitting by participating in a venture that commits sex

trafficking by fraud (Counts 15 and 18).  Flanders alone was charged with § 841

distribution of Alprazolam ("Xanax") (Counts 5, 8, 12, and 17).

During the six-day trial, the jury heard testimony from seven victims and

watched portions of their videos.  The jury also heard testimony from an expert on

Benzodiazepines and learned about the evidence seized during the 2007 and 2011

searches.  After the Government rested, Defendants brought a Rule 29 motion as to

all counts.  The district court granted the motion as to Counts 19 and 20[1] and

denied the motion as to the other counts.  The defense rested without putting on

any witnesses.  The jury returned guilty verdicts on all of the remaining counts.

On January 27, 2012, the district court entered a Preliminary Order of

Forfeiture against Flanders and Callum.  The court then held a sentencing hearing

on February 16, 2012.  At the hearing, the district court overruled Appellants'

objections to the pre-sentence report, adopted the advisory guideline range of 262–

327 months' imprisonment, and granted the Government's request for an upward

departure to life imprisonment.  The court heard testimony from victims, denied

Flanders's request for a downward variance, and concluded that life imprisonment

---

[1]   These two counts involved crimes against a victim who did not testify at trial.

was reasonable.  The court sentenced Callum to a total imprisonment term of life, including sixty months for the § 371 conspiracy and life imprisonment for each of the sex-trafficking charges, to run consecutively to each other and to the sixty-month term.  The court similarly sentenced Flanders to a total imprisonment term of life, including concurrent sixty-month terms for the § 371 conspiracy and drug counts and life terms for each of the sex-trafficking charges, to run consecutively to each other and to the sixty-month terms.

Judgment was entered against Flanders on February 21, 2012, and against Callum on February 22, 2012.  Both Appellants timely appealed their convictions and sentences (Appeal No. 12-10995).  The district court entered a Final Order of Forfeiture against Flanders and Callum on August 28, 2012.  Flanders filed a notice of appeal of the Final Order of Forfeiture on September 20, 2012 (Appeal No. 12-15027).  On September 26, 2012, the district court denied Flanders's motion for disclosure of grand jury transcripts and materials, and Flanders timely appealed (Appeal No. 12-15248).

## II. *Sufficiency of the Indictment*

Flanders argues that the indictment was defective because (1) the drug counts omitted a citation to the statute, and (2) the Government fraudulently told the grand jury that the crimes involved minors.  However, "a defendant must object before trial to defects in the indictment, . . . and the failure to do so waives

9

appellate review.  The only exceptions to the waiver rule are for claims that the indictment fails to state an offense—for instance, by omitting an element—or fails to invoke the court's jurisdiction." *United States v. Pacchioli*, 718 F.3d 1294, 1307 (11th Cir. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 804 (2013); *see* Fed. R. Crim. P. 12(b)(3)(B) ("The following must be raised before trial: a motion alleging a defect in the indictment or information—but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."); *id.* R. 12(e) ("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver.").  Because Flanders failed to challenge the indictment prior to trial and has not shown good cause for relief from the Rule 12(e) waiver, he has waived these challenges to the indictment.  *See United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006) (holding that because defendants did not raise before trial their argument that the indictment was filed in bad faith, "the issue is deemed to have been waived"); *United States v. Ramirez*, 324 F.3d 1225, 1227–28 & n.8 (11th Cir. 2003) (finding no good cause to excuse waiver where defendants had all the information necessary to challenge the indictment prior to trial but waited until after opening arguments to file their motion).

Even if we treat Flanders's argument as asserting that the drug counts did not state an offense, which would avoid the Rule 12(e) waiver, the claim lacks merit.  Flanders argues that the drug counts (Counts 5, 8, 12, and 17) are defective because they cite the penalty provision (21 U.S.C. § 841(b)) but fail to cite the substantive conduct provision (§ 841(a)) of the criminal statute.  Because Flanders challenges the adequacy of the indictment for the first time on appeal, "this Court must find the indictment sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Pena*, 684 F.3d 1137, 1147 (11th Cir. 2012) (quotation marks omitted).  Moreover, "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment . . . or to reverse a conviction."  Fed. R. Crim. P. 7(c)(2).

We readily conclude that Flanders was not prejudiced by the indictment's citation error.  The drug counts directly quote the following language from § 841(a)(1): "knowingly [and] intentionally . . . distribute . . . a controlled substance."  This language, coupled with the citation to § 841(b)(2), sufficiently charged Flanders with the offense for which he was convicted.  *See Pena*, 684 F.3d at 1147; *see also United States v. Elgersma*, 929 F.2d 1538, 1540–42 (11th Cir. 1991) (holding that defendant was not prejudiced by citation error where the language of the count tracked the language of the substantive requirements of the

11

offense, thus giving defendant full notice of the elements of the offense charged),

*reasoning adopted by United States v. Elgersma*, 971 F.2d 690, 691 n.1 (11th Cir.

1992) (en banc).  Thus, the citation error was harmless.

### III. *Sufficiency of the Evidence*

We review *de novo* a district court's denial of a motion for judgment of

acquittal on sufficiency of evidence grounds.  *United States v. Browne*, 505 F.3d

1229, 1253 (11th Cir. 2007).  In doing so, "we consider the evidence in the light

most favorable to the Government, drawing all reasonable inferences and

credibility choices in the Government's favor."  *Id.*  "It is not necessary that the

evidence exclude every reasonable hypothesis of innocence or be wholly

inconsistent with every conclusion except that of guilt."  *United States v. Faust*,

456 F.3d 1342, 1345 (11th Cir. 2006) (quotation marks omitted).  "If a reasonable

jury could conclude that the evidence establishes guilt beyond a reasonable doubt,

we will affirm the verdict." *Browne*, 505 F.3d at 1253.

### A. Conspiracy Charges (Counts 1 and 13)

To prove conspiracy in Counts 1 and 13, the Government had to establish

(1) the existence of an agreement between Flanders and Callum to violate 18

U.S.C. § 1591(a)(1) (sex trafficking by force, fraud, or coercion); (2) Flanders's

knowing and voluntary participation in the conspiracy; and (3) an overt act in

furtherance of the conspiracy.  *See* 18 U.S.C. §§ 371, 1594(c); *United States v.*

*White*, 663 F.3d 1207, 1214 (11th Cir. 2011).  "Because conspiracies are secretive by nature, the existence of an agreement and [Flanders's] participation in the conspiracy may be proven entirely from circumstantial evidence."  *White*, 663 F.3d at 1214 (quotation marks omitted).

Flanders argues that there was insufficient evidence of an agreement between Flanders and Callum to defraud the victims or of an overt act in furtherance of the conspiracy.  We disagree.  The victims testified that Callum represented himself as a Bacardi agent, and the jury could infer that he would not have known to make such a representation unless he were in on the fraud.  Furthermore, the jury heard testimony that Flanders falsely and fraudulently represented himself to be "Karen Watson," a fictitious female employee of a modeling agency who would put the victim in contact with a modeling scout.  Callum is on video laughing and telling a victim during a sexual assault to say hello to Flanders's alias "Karen Watson," whom Callum would have known about only had he been in on the fraud.  Callum also used the phrase "love your look" during another victim's video, mocking the phrase Flanders used routinely when contacting potential victims via modeling websites and thus demonstrating that Callum was a party to the fraud.  In the videos, the women lacked physical strength, despite one being an Army soldier and another a fitness instructor.  The jury could reasonably conclude from their observations of the women in the videos

that the women were drugged, and they could conclude that Callum, who had an

unparalleled opportunity to observe the unconscious and/or semi-unconscious

states of the victims while he was engaging in sex acts with them, knew that they

were drugged.  From this evidence, a reasonable jury could conclude that Callum

and Flanders had agreed to defraud the victims and had committed an overt act in

furtherance of the conspiracy.

Moreover, we wholly reject Flanders's argument that the victims' signatures

on modeling release forms evidenced their voluntary participation in the films and

created reasonable doubt of his guilt.  The evidence at trial established that the

victims signed those forms after being drugged.  Viewing the evidence and

drawing all reasonable inferences in the light most favorable to the Government,

we find that a reasonable jury could conclude that the evidence at trial established

Flanders's guilt beyond a reasonable doubt.  Accordingly, we affirm the verdict as

to the conspiracy counts, Counts 1 and 13.

**B. Sex-Trafficking Charges (Counts 2, 4, 7, 10, 14, and 16)**

To prove the sex-trafficking charges in Counts 2, 4, 7, 10, 14, and 16, the

Government had to prove that Defendants (1) did knowingly (2) in or affecting

interstate and foreign commerce, (3) entice, recruit, harbor, transport, provide,

obtain, or maintain by any means a person, (4) knowing, or in reckless disregard of

the fact, (5) that fraud would be used to cause such person to engage in a

commercial sex act.  *See* 18 U.S.C. § 1591(a)(1).  The evidence established that

Flanders used fraud both to recruit and entice the victims to travel to Miami and to

drug the victims in order to cause them to engage in filmed sex acts, and that the

films were then distributed commercially over the Internet.  Flanders, however,

argues that the victims' involvement was entirely voluntary and that the victims'

testimony regarding the attacks cannot be considered credible.  In light of the

overwhelming evidence at trial, these arguments are completely meritless.[2]

Because we find that a reasonable jury could find Flanders guilty of the sex-

trafficking charges beyond a reasonable doubt, we affirm the verdict as to Counts

2, 4, 7, 10, 14, and 16.

## C.  Benefitting Charges (Counts 3, 6, 9, 11, 15, 18)

To prove the sex-trafficking charges in Counts 3, 6, 9, 11, 15, and 18, the

Government had to prove that Defendants (1) did knowingly benefit, financially or

by receiving anything of value, (2) from participation in a venture which (a) in or

affecting interstate and foreign commerce, (b) has enticed, recruited, harbored,

---

[2]   The evidence established that (1) the victims were recruited by Flanders under the false
pretense of auditioning for a lucrative modeling contract in South Florida; (2) the victims were
"duped" by Flanders's emails pretending to be a female modeling agent and his phone calls
pretending to be a modeling scout working with the female agent; (3) the victims trusted
Flanders because they believed the female agent had referred him and he appeared professional;
(4) the victims unconsciously signed release forms after unknowingly consuming drugs,
provided by Flanders, which rendered their consent invalid; and (5) the two victims who agreed
to film "love scenes" were told by Flanders that it would be like acting in a movie, and they
never agreed to film pornography.  With regard to the victims' credibility, the jury observed the
victims' demeanor and had the opportunity to judge their character for truthfulness during their
direct and cross-examinations and made credibility determinations accordingly.

transported, provided, obtained, or maintained by any means a person,

(3) knowing, or in reckless disregard of the fact, (4) that fraud would be used to

cause such person to engage in a commercial sex act.  *See* 18 U.S.C. § 1591(a)(2).

Flanders argues that there is no evidence that he benefitted or attempted to benefit

financially from participating in the sex-trafficking venture.  He further argues that

his possession of copies of the videos was not evidence that he derived a benefit

from the venture because possession of adult pornography is legal.

The evidence showed that Flanders benefitted personally when he received

payment from two victims in the form of auditioning fees and when he took money

from the wallet of a third victim.  Moreover, the evidence established that

Appellants' "venture" was to produce and sell pornographic footage of Callum

having sex with drugged women.  Searches of Callum's business and home

uncovered thousands of commercial copies of the victims' DVDs, which were

being sold in pornography stores and on the Internet, as well as receipts showing

payment from the sales.  Flanders's name appeared on a release signed by Callum

in 2010, a copy of which was found in Flanders's bedroom.  Furthermore, during

both the 2007 and 2011 searches of Flanders's residence, officers seized copies of

the victims' videos, a thing of value to Flanders, who spent considerable time

online looking at pornography as evidenced by his Internet searches for "sex with

unconscious women."  Because Flanders aided Callum in creating the videos

Callum sold for financial remuneration, the jury could reasonably infer that Flanders had received the videos as remuneration for his work on the films. Finally, officers also found a package containing letters from Flanders to HomeGrownVideo revealing that Flanders was attempting to sell pornographic video footage of Callum and several young women, including at least one victim.

We conclude that there is sufficient evidence to uphold the conviction on these counts. The jury could infer that Flanders benefitted from the venture when he accepted "auditioning fees" from the victims. *Cf. United States v. Jennings*, 280 F. App'x 836, 844 (11th Cir. 2008) (unpublished) (finding sufficient evidence for the jury to infer that defendants derived a benefit from the sex-trafficking venture where their co-defendant used money derived from minor's prostitution to pay for their gas and hotel room). Moreover, drawing all reasonable inferences in favor of the Government, we conclude that Flanders's personal copies of the victims' videos as well as the letters from Flanders to HomeGrownVideo supported a finding that he derived a benefit from the venture. Because a reasonable jury could have found beyond a reasonable doubt that Flanders benefitted from the fraudulent scheme by selling the videos and by receiving fees from the victims and free pornography from Callum, we conclude that there is sufficient evidence to affirm Flanders's conviction on these counts.

**D. Drug Charges (Counts 5, 8, 12, 17)**

In order to convict Flanders on the drug charges in Counts 5, 8, 12, and 17, the Government had to "prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute." *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam). Possession may be shown by constructive possession. *Id.* at 1392. Constructive possession, whether exclusive or joint, exists when a defendant has ownership, dominion, or control over an object or the premises where the object is found. *Id.*

The evidence here was sufficient for a reasonable jury to conclude that Flanders had knowing possession of Benzodiazapines and that he distributed them. When his residence was searched in 2007, the police found Diazepam pills in the bathroom; during the 2011 search, they found Clonazepam pills in a bottle on a nightstand. This evidence was sufficient to establish Flanders's constructive possession over the drugs. Specifically with regard to the Diazepam pills, the evidence established that Flanders was living at the residence, along with two adult relatives, and stored pornographic videos of victims in his bedroom. The Diazepam pills, which were concealed in a medicine bottle in a shared bathroom at the residence, permitted the inference that Flanders was in joint constructive possession of the drugs.

18

Moreover, there was ample evidence at trial that he knowingly distributed the drugs to the victims.  The victims testified to remarkably similar experiences after ingesting the alcohol provided by Flanders during the "pre-audition," including bouts of unconsciousness, weakness, and memory loss.  Nearly all of the victims testified that the amount of alcohol consumed was insignificant, lending credence to the conclusion that they were not simply feeling the effects of the alcohol when they became unconscious and weak.  Moreover, an expert explained that the effects of the drugs are made stronger when dissolved in liquid and that alcohol especially intensifies the drugs' effects.  Finally, at least four of the victims testified that they had never before knowingly ingested Alprazolam, and yet they all tested positive for the drug following their auditions.  Viewing the evidence and drawing all reasonable inferences in the light most favorable to the Government, we conclude that a reasonable jury could find Flanders guilty of the drug charges beyond a reasonable doubt.  Accordingly, we affirm the verdict as to Counts 5, 8, 12, and 17.

## IV. *Prosecutorial Misconduct*

The Eleventh Circuit reviews claims of prosecutorial misconduct *de novo. United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012).  "But where a defendant fails to make a contemporaneous objection to the alleged misconduct in the district court, we review such claims for plain error."  *Id.*  Under the plain error

standard, the defendant must show that (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings. *Id.* "Under the third prong of the plain error analysis, the defendant bears the burden of persuasion and must show that the claimed error affected his substantial rights, which almost always requires that the error must have affected the outcome of the district court proceedings." *Pena*, 684 F.3d at 1151 (quotation marks omitted).

Flanders asserts that the indictment and superseding indictment were procured by deception because the Government falsely alleged to the grand jury that Flanders was involved in the sexual exploitation of minors. However, even if Flanders's allegations of misconduct before the grand jury are true, "the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation." *United States v. Mechanik*, 475 U.S. 66, 67 (1986) (explaining that "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted"). The record shows that there was no mention of child exploitation before the petit jury. Thus, the petit jury's guilty verdicts demonstrate that there was probable cause to charge Defendants with the offenses for which they were convicted, and any alleged misconduct before the

grand jury was harmless.  Accordingly, we affirm the district court's denial of Flanders's motion for disclosure of the grand jury transcripts and materials.

Flanders next argues that the Government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  According to Flanders, the Government failed to provide the arrest information filed by Agent Chavez that contained exculpatory and impeaching evidence, and there are FBI 302s that were not turned over to Flanders.  "A *Brady* claim is available if either exculpatory or impeachment evidence is suppressed, regardless of the good faith or bad faith of the prosecution.  A defendant who seeks a new trial based on an alleged *Brady* violation must show that, had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceeding would have been different."  *United States v. Fernandez*, 136 F.3d 1434, 1438 (11th Cir. 1998) (citation omitted).  Flanders provides no details regarding what type of exculpatory and impeachment evidence was contained in the arrest information or in the allegedly missing 302s.  Furthermore, he has not shown that there is a reasonable probability that, had the evidence been revealed, the outcome of the proceeding would have been different.  Accordingly, we find Flanders's *Brady* claim wholly without merit.

Finally, Flanders argues that the prosecutor's statements in his closing argument require reversal of Flanders's conviction because (1) the prosecutor, over

objection, improperly commented on Flanders's lack of testimony to police; (2) the

prosecutor, over objection, improperly argued that Flanders committed rape; and

(3) the prosecutor tainted the jury by stating throughout its closing that Flanders

lied "over and over again" both to the police and the women.  Flanders concludes

that the cumulative effect of the improper prosecutorial comments infected the

entire trial.

"[I]n reviewing claims that a prosecutor's comments violated a defendant's

Fifth Amendment right against compulsory self-incrimination," the Court "must

determine whether a prosecutor's remarks were manifestly intended to urge the

jury to draw an inference from the defendant's silence that he or she is guilty, or

whether a jury would naturally and necessarily construe the prosecutor's remarks

as inviting such an impermissible inference."  *United States v. Thompson*, 422 F.3d

1285, 1299 (11th Cir. 2005).  Whether these conditions are satisfied "can be

determined only by examining the context in which the statement was made."  *Id.*

In support of his argument that the prosecutor, over objection, improperly

commented on Flanders's lack of testimony to police, Flanders cites the following

portion of the Government's closing argument:

> If Mr. Flanders really had been honest with the victims, if he had
> nothing to hide, then why didn't he just say that to the police when
> they interviewed him?   Why did he lie about knowing Emerson
> Callum?  We know that he knew his name was Emerson Callum . . . .
> He told [a victim] three months before that his coworker's name is
> Emerson.   That is how he knew it. . . .   Why was he so afraid of

> admitting that he had been to the IHOP parking lot with a [victim]?
> Why didn't he just say, ". . . that is the woman I lied to, to get her
> down here.  Once she was here, I came clean.  She decided to do
> pornography and then she got real sick.  Hope she is okay."  What did
> he have to hide?

Trial Tr. 214:23–24.  These remarks do not explicitly reference Flanders's silence

to the police; instead, the remarks question why he lied to the police.  Moreover, it

cannot be said that these remarks "were manifestly intended to urge the jury to

draw an inference from the defendant's silence that he . . . is guilty."  *Thompson*,

422 F.3d at 1299.  Accordingly, we find no merit to Flanders's claim that the

prosecutor improperly commented on Flanders's silence.

Similarly, there is no merit to Flanders's other claims of prosecutorial

misconduct or that the comments resulted in cumulative error.  In addressing a

claim of cumulative error, "we consider all errors preserved for appeal and all plain

errors in the context of the trial as a whole to determine whether the appellant was

afforded a fundamentally fair trial."  *House*, 684 F.3d at 1197 (quotation marks

omitted).  "The total effect of the errors on the trial will depend, among other

things, on the nature and number of the errors committed; their interrelationship, if

any, and combined effect; the strength of the government's case; and the length of

trial."  *Id.* (quotation marks and alteration omitted).  Upon review of the record, we

find that Flanders has not demonstrated prosecutorial misconduct in any of the

cited comments.  Thus, there was no error, let alone cumulative error, in the closing argument.

## V. *Evidentiary Rulings*

We review a district court's evidentiary rulings for a clear abuse of discretion and will reverse those rulings "only if the resulting error affected the defendant's substantial rights."  *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).  "[D]eterminations as to the relevancy of evidence are well within the broad discretion of the district courts and will not be disturbed on appeal absent a showing that the trial court abused its discretion."  *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quotation marks omitted).  "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* (quoting Fed. R. Evid. 401).

Although Federal Rule of Evidence 403 permits the district court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," Fed. R. Evid. 403, it is "an extraordinary remedy" that should be used sparingly, *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989).  "[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion."  *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) (emphasis in

original).  Accordingly, "in reviewing issues under Rule 403, we look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."  *Tinoco*, 304 F.3d at 1020 (quotation marks omitted).

A review of the record reveals that the district court did not abuse its discretion in admitting evidence of the Internet searches over Appellants' objections.  The evidence of prior Internet searches for sex with unconscious women was probative because, at a minimum, it demonstrated either: (1) that Flanders was performing background research for his scheme, which involved and relied upon sexual performances by or with drugged women; or (2) that Flanders enjoyed viewing images of sexual intercourse with unconscious women.  Under either or both scenarios, the evidence was relevant.  Admission of the evidence would have enabled the jury to compare the searches (and any resulting images) with the allegations against the Defendants for any similarities.  *Cf. United States v. Pruitt*, 638 F.3d 763, 767 (11th Cir. 2011) (discussing jury's consideration of the record of Internet searches using terms related to child pornography).

To the extent Flanders claims that the Internet-search evidence was unfairly prejudicial, he has failed to properly raise the issue.  *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of

that issue and precludes our considering the issue on appeal."); Fed. R. App. P.

28(a)(8) (requiring that appellant's brief contain "appellant's contentions and the

reasons for them, with citation to the authorities and parts of the record on which

the appellant relies").  Nevertheless, Flanders's argument in this regard is without

merit, particularly in view of the quantum of the other evidence presented.

Similarly unpersuasive are Flanders's arguments with regard to the

ownership of and access to the computers.  There was no evidence adduced at trial

as to the owner of the computers found in the residence Flanders shared with his

girlfriend.  Rather, the jury was presented with computer analysis establishing that

Flanders's email was used and that someone logged into the computers and

conducted hundreds of searches of modeling websites and for images of sex with

unconscious women.  The jury could infer that Flanders, not his girlfriend,

conducted these searches, particularly in light of the fact that they were conducted

at times when Flanders's girlfriend was working.  Nevertheless, Flanders's

arguments do not strike at the relevancy of the evidence, but rather the weight the

jury was entitled to assign to it.

Flanders also claims that the district court erred in allowing for the

introduction of the drugs found during a search in 2007, which were located in a

shared bathroom of the residence, because Flanders did not have exclusive access

to the bathroom, and there was no evidence of constructive possession.  Flanders's

arguments in this regard largely mirror his claims, discussed above, regarding the

ownership of and access to the computers.  As explained in the earlier discussion

addressing the sufficiency of the evidence, the Diazepam pills, which were

concealed in a medicine bottle in a shared bathroom at the residence, permitted the

inference that Flanders was in joint constructive possession of the drugs.

Moreover, Flanders fully explored this issue on cross-examination and argued that

his shared residence vitiated the significance of the Diazepam, as well as the online

searches.  Notwithstanding the foregoing, even if the inferences of constructive

possession were unwarranted, any error in the admission was harmless given the

overwhelming evidence of Appellants' guilt.[3]

Similarly, there is no merit to Flanders's argument that the reading into

evidence of a transcript of his 2007 post-*Miranda* statements violated the best

evidence rule.  "The best evidence rule provides that the original documents must

be produced to prove the content of any writing, recording or photograph." *United

States v. Howard*, 953 F.2d 610, 612 n.1 (11th Cir. 1992) (citing Fed. R. Evid.

1002–06).  An original is not required if it is lost or destroyed, unless it is

unavailable through bad faith.  Fed. R. Evid. 1004.  A duplicate is admissible to the

same extent as an original, unless there is a genuine question of authenticity or it

would be unfair to admit the duplicate.  Fed. R. Evid. 1003; *see United States v.*

---

[3]   We find no merit in Callum's arguments that the evidence of the drugs and Internet searches
found during the two searches of Flanders's residences was unfairly prejudicial to Callum.

*Ross*, 33 F.3d 1507, 1513–14 (rejecting best-evidence challenge to transcripts of

destroyed recordings of co-conspirators' conversations).

At trial, Detective Fletcher testified that the audio recording of Flanders's

statements had been inadvertently destroyed.  Furthermore, there is no evidence of

bad faith or to support Flanders's assertion that the transcript was untrustworthy.

Thus, we conclude that the district court did not abuse its discretion when it

admitted into evidence a transcript of Flanders's statements.  Moreover, to the

extent that Flanders argues for the first time on appeal that the publication

method—wherein the transcript was read into the record—violated the rules, this

argument is subject to, and fails, the plain error standard.  Given the overwhelming

evidence of his guilt, Flanders cannot show that the method of publication affected

the outcome of his district court proceedings, as required under plain error review.[4]

## VI. *Public Trial*

Appellants argue that their Sixth Amendment right to a public trial was

violated when the court ordered the courtroom doors locked during closing

arguments.  "The Sixth Amendment right to a public trial is not absolute and must,

on occasion, give way to other rights and interests."  *United States v. Brazel*, 102

---

[4]  For the first time on appeal, Flanders argues that the search warrant was invalid because it was based on misrepresentations that the case involved minors, rendering inadmissible all evidence seized pursuant to the warrant.  Because Flanders did not raise this issue prior to trial, it is waived.  *See* Fed. R. Crim. P. 12(e); *United States v. Ford*, 34 F.3d 992, 994 n.2 (11th Cir. 1994) ("A party's failure to present a suppression motion prior to trial constitutes waiver unless the district court grants relief for good cause shown.").

F.3d 1120, 1155 (11th Cir. 1997) (citing *Waller v. Georgia*, 467 U.S. 39, 45

(1984)).  We have "recognized a distinction between total closures of proceedings

. . . and situations where the courtroom is only partially closed to spectators."  *Judd*

*v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001).  In the event of a partial closure,

where access to the courtroom is retained by some spectators (such as

representatives of the press or the defendant's family members), "a court need

merely find a 'substantial' reason for the partial closure," *id.*, rather than the

"compelling" reason that is required to justify a complete closure, *Brazel*, 102 F.3d

at 1155.

        The record establishes the following facts: (1) the courtroom was nearly full,

and several of Defendants' family and friends were present during closing

arguments; (2) only those people who arrived past 9:05 a.m. were denied access;

(3) neither side objected when the court proposed locking the doors; (4) when

defense counsel expressed concern after closing arguments that some of

Defendants' family had been locked out of the courtroom, the court offered

counsel the opportunity to redeliver their closing arguments with the doors

unlocked, but both sides declined; (5) before the verdicts were announced, defense

counsel moved for a mistrial on Sixth Amendment grounds, but the court denied

the motion, finding no contemporaneous objection; and (6) defense counsel later

moved for a new trial on the same grounds, but the district court again denied the

motion, explaining in a written order that it had locked the doors once closing

arguments had begun in order to limit distractions to the jury that could have

inhibited their ability to perform their function.  Under these facts and for the

reasons given in the district court's thoughtful order, *United States v. Flanders*,

845 F. Supp. 2d 1298 (S.D. Fla. 2012), we readily conclude that the Defendants'

right to a public trial was not violated by the partial closure of the courtroom.  *See*

*Aaron v. Capps*, 507 F.2d 685, 687–88 (5th Cir. 1975)[5] (finding no constitutional

violation caused by partial closure of criminal trial where some members of the

public, including the news media and defendant's relatives and clergyman, were

admitted; the courtroom was at least three-fourths full; and the transcript of the

trial became public record).

## VII. *Double Jeopardy*

Both Flanders and Callum argue that each pair of their 18 U.S.C.

§ 1591(a)(1) and (a)(2) convictions, arising out of the same set of facts, was

multiplicitous and therefore violated the Double Jeopardy Clause.  We review

claims of double jeopardy *de novo*.  *United States v. Bobb*, 577 F.3d 1366, 1371

(11th Cir. 2009).  Among other prohibitions, the Double Jeopardy Clause of the

Fifth Amendment does not allow for multiple punishments for the same offense.

---

[5]   The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209
(11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to
October 1, 1981.

*Id*. Where a defendant has violated two different criminal statues, the Double

Jeopardy Clause is implicated if both statutes prohibit the same act or if one act is a

lesser included offense of the other. *Id*. However, Congress has the power to

authorize multiple punishments arising out of the same act or transaction, and there

is no double jeopardy implication where legislative intent is clear. *Id*.

In order to determine whether two provisions punish the same offense, we

look to whether each provision requires proof of a fact that the other does not. *Id*.

at 1372 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). This

analysis focuses on the proof necessary to establish the statutory elements for each

offense, not the evidence presented at trial. *Id*.

Section 1591 reads:

> (a)  Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> (2) benefits financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that . . . fraud . . . will be used to cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591.

A plain reading of § 1591(a)(1) and (a)(2) demonstrates that the two subsections meet the *Blockburger* test of whether separate convictions are authorized.  Section 1591(a)(1) requires proof that the defendant was criminally responsible for the recruitment or enticement of a person with knowledge that the person will be fraudulently induced to engage in a commercial sex act.  18 U.S.C. § 1591(a)(1).  Section 1592(a)(2) does not require proof of such conduct on the defendant's part, as only participation in a venture which has recruited or enticed a person for such purposes is required.  *Id.* § 1592(a)(2).  Further, while § 1592(a)(2) requires proof that the defendant received a valuable benefit from his participation, § 1591(a)(1) requires no such proof.  Each subsection, therefore, requires proof of an element that the other does not, and the separate convictions for each do not result in a double jeopardy violation.  *See Bobb*, 577 F.3d at 1372.

## VIII. *Reasonableness of the Sentences*

Both Flanders and Callum challenge the reasonableness of their consecutive total life sentences.  We employ a two-step process to review a sentence for reasonableness.  *United States v. Beckles*, 565 F.3d 832, 845 (11th Cir. 2009). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately

explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Once we determine that the district court did not procedurally err, we then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard, based on the totality of the circumstances." *Beckles*, 565 F.3d at 845 (quotation marks omitted). We will remand for resentencing only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted). "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006) (quotation marks omitted).

**A. § 2A3.1(b)(1) Enhancements**

Appellants argue that the district court erred in applying U.S.S.G. § 2G1.1(c)'s cross reference to U.S.S.G. § 2A3.1 in calculating their guideline range. We review *de novo* the district court's application of the Sentencing Guidelines, and we review underlying factual findings for clear error. *United States v. Foley*, 508 F.3d 627, 632 (11th Cir. 2007). The Guidelines instruct that when a cross reference applies, the entire referenced offense guideline, including

33

enhancements, should apply.  U.S.S.G. § 1B1.5(a).  "Additionally, the [G]uidelines specifically instruct courts to take into consideration all relevant conduct when calculating the guideline range."  *United States v. Webb*, 665 F.3d 1380, 1383 (11th Cir. 2012) (citing U.S.S.G. § 1B1.3).

The guideline range for convictions under 18 U.S.C. § 1591 are calculated in U.S.S.G. § 2G1.1.  U.S.S.G. § 2G1.1, cmt.  Under a cross-reference provision, if the offense "involved" conduct described in 18 U.S.C. § 2241(a) or (b) (aggravated sexual abuse) or § 2242 (sexual abuse), the guideline should be calculated under § 2A3.1.  *Id.* § 2G1.1(c)(1).  Section 2A3.1 provides for a four-level enhancement only if the offense involved conduct described in 18 U.S.C. § 2241(a) or (b).  *Id.* § 2A3.1(b)(1).  It is aggravated sexual abuse when a defendant "administers to another person . . . without the knowledge or permission of that person, a drug, intoxicant, or other similar substance[,]" which "substantially impairs the ability of that other person to appraise or control conduct[,]" and "engages in a sexual act with that other person[.]"  18 U.S.C. § 2241(b)(2).

Callum appears to argue that because he was convicted of fraudulent inducement, and not a sex act itself, his sentence cannot be enhanced based on the sex act.  However, the plain language of the cross reference states that it should apply if the offense "involved" § 2241 conduct, not merely if the § 2241 conduct was the basis for the conviction.  *See* U.S.S.G. § 2G1.1(c).  The offense conduct

met the description in § 2241(b)(2), as Flanders gave drugs to women who did not

know the alcohol they were drinking contained drugs, and Callum then had sex

with them.  Accordingly, we find that Callum's challenge to the application of the

§ 2G1.1(c) cross reference is without merit.

Flanders argues that the court erred in imposing the § 2A3.1(b)(1)

enhancement to his guideline calculation because the conduct described in 18

U.S.C. § 2241(a) or (b) was used to calculate his base offense and thus could not

be used for purposes of an enhancement.  Flanders argues that imposing the

enhancement constituted impermissible double counting.

We review a claim of double counting *de novo*.  *United States v. Suarez*, 601

F.3d 1202, 1220 (11th Cir. 2010).  "Impermissible double counting occurs only

when one part of the Guidelines is applied to increase a defendant's punishment on

account of a kind of harm that has already been fully accounted for by application

of another part of the Guidelines."  *Webb*, 665 F.3d at 1382 (quotation marks

omitted).  "Double counting a factor during sentencing is permitted if the

Sentencing Commission intended that result and each guideline section in question

concerns conceptually separate notions relating to sentencing."  *Id.* (quotation

marks omitted).  We presume that the Commission intended to apply separate

sections cumulatively unless otherwise specified, "and, as a result, a defendant

asserting a double counting claim has a tough task."  *Id.* (quotation marks omitted).

In this case, the district court did not err in applying the 2G1.1(c) cross reference and 2A3.1(b)(1) enhancement in conjunction with one another. Based on the plain language of the Guidelines, the Sentencing Commission intended for the entirety of § 2A3.1, including any enhancements, to apply following the application of the cross reference. *See* U.S.S.G. § 1B1.5(a). Further, the cross reference and the enhancement do not deal with identical conduct. The cross reference applies where the offense involved any conduct constituting sexual abuse. *See id*. § 2G1.1(c)(1); 18 U.S.C. §§ 2241(a)–(b) and 2242. The enhancement, however, applies an additional four levels only where the offense involved conduct constituting the more severe subset of aggravated sexual abuse offenses. *See* U.S.S.G. § 2A3.1(b)(1); 18 U.S.C. § 2241(a) and (b). To the extent that Appellants' base offense level and enhancement were based on the same conduct, therefore, those calculations did not constitute impermissible double counting. *See Webb*, 665 F.3d at 1352–53.

**B. § 2G1.3(d) Grouped Offenses**

Flanders next argues that the district court incorrectly grouped his offenses based on § 2G1.3(d), which deals with underage victims. In the case of a conviction or convictions for sex trafficking involving minors, the grouping rules apply as if each victim constituted a separate conviction. U.S.S.G. § 2G1.3(d)(1).

The same grouping rule applies where the offense did not involve any minors. *Id*.
§ 2G1.1(d)(1).

Flanders did not object to the use of § 2G1.3(d) below, so plain error review
applies. *See United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011).
Here, as the Government concedes, the district court applied the wrong Guidelines
provision in grouping the offenses, as there was no evidence that the offenses
involved minors.  Because the explicit language of the rule makes clear that an
error occurred, the error can be classified as "plain."  *See United States v. Lejarde-
Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).  However, the correct
Guidelines section, § 2G1.1(d), would have grouped the offenses in the exact same
manner. *See* U.S.S.G. §§ 2G1.1(d)(1) and 2G1.3(d)(1).  The error therefore did not
affect Flanders's substantial rights, as the outcome of the sentencing could not
have been any different had the correct provision been applied.  *See Pena*, 684
F.3d at 1151.  Accordingly, the error does not meet the plain error standard and is
not a basis upon which to find procedural unreasonableness.

## C. § 5K2.8 Upward Departure

Appellants argue that the court erred in granting the Government's motion
for a § 5K2.8 upward departure, which applies when a defendant's conduct was
unusually "heinous, cruel, or brutal."  We review for abuse of discretion the district

court's decision to grant a departure. *United States v. Siegelman*, 640 F.3d 1159, 1190 (11th Cir. 2011).

After calculating a defendant's guideline range, the district court is directed to consider whether a departure warrants consideration. U.S.S.G. § 1B1.1(b). The court can grant an upward departure if the defendant's conduct was "unusually heinous, cruel, brutal, or degrading to the victim," including where the offense involves a "prolonging of pain or humiliation." *Id*. § 5K2.8. We have upheld the district court's imposition of the § 5K2.8 departure where: an HIV-positive defendant knowingly exposed a minor victim to the disease without notifying her, *United States v. Blas*, 360 F.3d 1268, 1273–74 (11th Cir. 2004); a defendant forced victims to engage in oral, anal, and vaginal sex, *United States v. Lewis*, 115 F.3d 1531, 1538–39 (11th Cir. 1997); and a defendant exposed victims to public embarrassment and repeated harassing letters over a period of twenty years, *United States v. Taylor*, 88 F.3d 938, 946 (11th Cir. 1996).

We readily conclude that the district court did not abuse its discretion in granting the upward departure. Flanders videotaped Callum having sex with women who were under the influence of drugs that Flanders had given to them without their knowledge. Victims woke up covered in bodily fluids and uncertain of what had happened to them. Appellants then distributed those videos over the Internet, where the videos will be available indefinitely, thus "prolonging [the

victims'] pain or humiliation." U.S.S.G. § 5K2.8. The district court did not abuse its discretion when it concluded that Appellants' conduct was "unusually heinous, cruel, brutal, or degrading to the victim[s]." *Id.* Thus, the upward departure was not an abuse of discretion.

### D. Substantive Reasonableness

Appellants challenge the substantive reasonableness of their life sentences. On substantive reasonableness review, we can "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). Among the factors that the court should consider in sentencing are the guideline range; the nature and circumstances of the offense; and the need for the sentence to reflect the seriousness of the offense, to deter criminal conduct, and to protect the public from the defendant's future crimes. 18 U.S.C. § 3553(a). The weight to be given any particular factor in sentencing generally is left to the sound discretion of the district court. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007).

Neither Flanders nor Callum has met his burden of demonstrating that his total life sentence was substantively unreasonable. *See Thomas*, 446 F.3d at 1351.

Flanders used false pretenses to convince women to travel to South Florida, told the women that they had to drink alcohol for a commercial, drugged the alcohol, and drove the women to Callum, who had sex with the women while they were under the influence of the drugs.  Appellants' crimes were made more serious, warranting a longer sentence, by the fact that they filmed the sexual encounters and then distributed those videos in DVDs and over the Internet.  *See* 18 U.S.C. § 3553(a)(2)(A); *Irey*, 612 F.3d at 1208 (explaining that the seriousness of the defendant's crime was enhanced because he recorded his sexual assaults, in that case on children, and distributed the videos on the Internet, which (1) "magnified and perpetuated" the harm, because each viewing of the video represented a renewed violation of the victims, and (2) encouraged others to commit similar crimes).

A long sentence also could be justified by the need to protect the public from future crimes of the Defendants, underscored by the fact that Flanders and Callum continued their scheme after having been arrested and charged in state court.  *See* 18 U.S.C. § 3553(a)(2)(C).  Moreover, although neither Flanders nor Callum had a significant criminal history, their scheme took place over a number of years dating back to 2006 and involved a large number of victims.  *See United States v. Campbell*, 491 F.3d 1306, 1317 (11th Cir. 2007) (explaining that a first conviction is not the same as being a first time offender where the fraud took place over a

number of years and the defendant tried to conceal the fraud).  At sentencing, the prosecutor's proffer showed that there were at least fifty victims, only seven of whom testified at trial to Appellants' abhorrent conduct.

Neither Flanders nor Callum presents any persuasive argument as to why a life sentence was outside the range of reasonable sentences, and the facts of their crimes do not support such a conclusion.  Accordingly, we hold that their sentences are substantively reasonable.[6]

## IX. *Constitutionality of the Sentence*

Finally, Flanders argues that his life sentences violated the Eighth Amendment's prohibition against cruel and unusual punishment.  "We review challenges to the constitutionality of a sentence *de novo*."  *United States v. Sanchez*, 586 F.3d 918, 932 (11th Cir. 2009).  However, when a defendant fails to raise an Eighth Amendment challenge to a sentence in the district court, we review that challenge on appeal for plain error.[7]  *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005).  Outside the context of capital punishment cases, successful Eighth Amendment challenges are "exceedingly rare."  *Solem v. Helm*, 463 U.S. 277, 289 (1983).  "In non-capital cases, the Eighth Amendment encompasses, at

---

[6]  There is no merit to Flanders's argument that the court should have granted his motion for a downward variance.
[7]  It is questionable whether Flanders raised an Eighth Amendment objection below.  While he asserted that a life sentence would be "cruel and unusual," he did so in the context of requesting a variance before the sentence was actually imposed.  Under any standard of review, however, there is no merit to Flanders's Eighth Amendment challenge.

most, only a narrow proportionality principle." *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (per curiam) (quotation marks omitted). We review the sentence imposed by first determining whether the sentence is "grossly disproportionate to the offense committed." *Id.* If we find that it is, we then consider sentences imposed on others convicted of the same crime. *Id.*

Flanders's argument—that his consecutive life sentences violate the Eighth Amendment because he had no prior convictions and the sentences demonstrate a lack of mercy and compassion—is wholly without merit. The statutory range for the sex-trafficking counts is fifteen years to life. *See* 18 U.S.C. §§ 1591(b)(1), 1594(b). Accordingly, the sentence imposed for each count was within the limits prescribed by the statute. *See United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005) (per curiam) ("In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment."). Moreover, for the same reasons that his sentence is not substantively unreasonable, Flanders's total life sentence was not so disproportionate to his crimes that it would be considered cruel and unusual under the Eighth Amendment.

## X. *Ineffective Assistance of Counsel*

Flanders raises numerous ineffectiveness allegations. "Generally, claims of ineffective assistance of counsel are not considered for the first time on direct appeal." *United States v. Tyndale*, 209 F.3d 1292, 1294 (11th Cir. 2000) (per

curiam) (noting exception for cases where the record is "sufficiently developed").

Because we find that the record is not sufficiently developed to facilitate

consideration of Flanders's ineffectiveness claims, we decline to address the merits

of these claims on direct appeal.

## XI. *Flanders's Appeal of the Final Order of Forfeiture*

Under appeal number 12-15027, Flanders appeals *pro se* from the district

court's final order of forfeiture.  After a conviction upon which criminal forfeiture

is sought, the court must determine which property is forfeitable as soon as

practical following the conviction.  Fed. R. Crim. P. 32.2(b)(1)(A).  The court must

then enter a preliminary order of forfeiture setting forth the money or property that

will be forfeited.  *Id*. R. 32.2(b)(2)(A).  The preliminary order of forfeiture

becomes final as to the defendant at sentencing, during which the court must

include the forfeiture when pronouncing sentence and the forfeiture order in the

judgment.  *Id*. R. 32.2(b)(4)(A) and (B).  The time for the defendant to file an

appeal from a forfeiture order runs from the entry of the judgment.  *Id*. R.

32.2(b)(4)(C).  A final order of forfeiture is entered after the court has had an

opportunity to account for any third-party rights in the forfeited property.  *Id*. R.

32.2(c)(2).  The advisory committee notes explain that a defendant's right to

appeal a forfeiture order runs from the entry of the preliminary order of forfeiture,

because that is when the order becomes final as to the defendant.  *Id*. R. 32.2,

Advisory Committee Note, Subdivision (b) (2000 Adoption).  Because the final order of forfeiture has no bearing on the defendant's rights, the defendant has no right to appeal that order.  *Id.*

We previously authorized Flanders to file a separate, *pro se* brief, only insofar as he challenged the district court's "Final Order of Forfeiture," and directed that all remaining arguments should be raised and submitted in the counseled brief.  However, we now conclude that Flanders has no standing to appeal from the final order of forfeiture.  *See* Fed. R. Crim. P. 32.2, Advisory Committee Note, Subdivision (b).  Therefore, we dismiss appeal number 12-15027 for a lack of jurisdiction based on Flanders's lack of standing.  *See United States v. Edwards*, 728 F.3d 1286, 1291 (11th Cir. 2013) (explaining that we are obliged to examine our own jurisdiction, including whether an appellant has standing).  Pursuant to our order, Flanders's counsel could have raised any challenge to the preliminary order of forfeiture in its initial appellate brief.

## XII. *Conclusion*

We affirm the Appellants' convictions and sentences (Appeal No. 12-10995) as well as the district court's order denying disclosure of the grand jury transcripts and materials (Appeal No. 12-15248).  Flanders's *pro se* appeal of the Final Order of Forfeiture (Appeal No. 12-15027) is dismissed for lack of jurisdiction.

**AFFIRMED IN PART; DISMISSED IN PART.**

44